*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SAM,

        Petitioner-Appellee,

v

SEL,

        Respondent-Appellant.

UNPUBLISHED
January 16, 2025
9:58 AM

No. 367676
Livingston Circuit Court
LC No. 23-058237

Before: GADOLA, C.J., and RICK and MARIANI, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's August 30, 2023 order granting petitioner's request for a non-domestic stalking personal protection order (PPO). On appeal, respondent argues that petitioner only alleged one incident of prohibited conduct in her petition for a PPO and at the evidentiary hearing. We conclude that respondent has established plain error affecting her substantial rights and reverse the trial court's order.

## I. BACKGROUND

Petitioner and respondent are sisters. Petitioner sought an ex parte PPO against respondent, claiming respondent physically assaulted her after the parties had an argument. Petitioner and respondent both cared for their mother, who suffered from Alzheimer's and dementia, even though they had a contentious relationship and rarely interacted. To monitor her mother's care and safety, petitioner installed security cameras in her mother's apartment. Petitioner alleged that on July 10, 2023, she checked her mother's cameras and saw that they were offline. Petitioner visited her mother's apartment and found respondent there. Respondent explained that she unplugged the cameras during her visit and that she planned to plug them back in before she left. The parties argued about the cameras before petitioner decided to leave the apartment. As petitioner leaned over to kiss the parties' mother goodbye, respondent grabbed petitioner's hair, pulled her head back and forth, and hit petitioner in the head with her hand.

After this incident, petitioner filed a police report and petitioned for a PPO against respondent. The trial court denied petitioner's ex parte request for a PPO and found that respondent had not committed two or more acts of willful, unconsented contact in light of the

allegations in the petition. The court also found that the petition did not contain sufficient information to demonstrate a course of stalking or harassment that would terrorize a reasonable person. Petitioner requested an evidentiary hearing and the trial court granted her request.

At the hearing, petitioner testified about the parties' argument before respondent grabbed petitioner's hair. Petitioner admitted to raising her voice and using expletives with respondent. Petitioner acknowledged that respondent had never physically attacked her before the incident, and she could not recall any instances when respondent had threatened her. Petitioner explained that the parties had always had heated arguments that involved yelling and name-calling. Petitioner testified that respondent made a statement before the incident about contacting an attorney to remove petitioner from the parties' mother's trust. However, the record did not clearly reflect when respondent made the alleged statement to petitioner.

The trial court granted petitioner's request for a PPO against respondent, although it expressed a considerable amount of hesitation in doing so. While the court repeatedly stated its belief that a PPO was not necessary in the parties' case, the trial court also stated, "the law does make some statements that a reasonable person would fear this, then I should issue it." In its findings on the record and in its order granting the PPO against respondent, the trial court did not identify what conduct constituted willful, unconsented conduct other than respondent grabbing petitioner's hair. This appeal followed.

## II. PRESERVATION AND STANDARD OF REVIEW

"In civil cases, Michigan follows the raise or waive rule of appellate review." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 2. An issue is preserved for appellate review if it has been raised before the lower court and pursued on appeal, although a trial court need not have addressed an issue that was raised in order for the issue to be preserved. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). While the trial court initially denied the petitioner's petition because it found that petitioner did not allege two or more acts of willful, unconsented contact in light of the allegations, respondent did not argue in the lower court proceedings that only one instance of prohibited conduct occurred. Therefore, this issue is unpreserved on appeal. See *id*.

We review a trial court's decision regarding whether to issue a PPO for an abuse of discretion. *TT v KL*, 334 Mich App 413, 438; 965 NW2d 101 (2020). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Id*. "A court necessarily abuses its discretion when it makes an error of law." *Id*. A trial court's findings of fact are reviewed for clear error. *Berryman v Mackey*, 327 Mich App 711, 717; 935 NW2d 94 (2019). "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. at 717-718. We review issues of statutory construction de novo. *TT*, 334 Mich App at 438. We review unpreserved issues regarding a trial court's decision to grant a personal protection order for plain error affecting substantial rights. *CAJ v KDT*, 339 Mich App 459, 464; 984 NW2d 504 (2021). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

Respondent challenges the trial court's order granting petitioner's non-domestic stalking PPO, arguing that petitioner only alleged one incident of conduct prohibited by MCL 750.411h or MCL 750.411i. We agree.

For a court to issue a PPO pursuant to MCL 600.2950a(1), a petitioner must allege facts that constitute stalking as defined by MCL 750.411h, MCL 750.411i, or MCL 750.411s. See MCL 600.2950a(1). MCL 750.411h and MCL 750.411i define "stalking" as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411h(1)(d);[1] MCL 750.411i(1)(e). For purposes of these statutes, harassment is defined as:

> conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose. [MCL 750.411h(1)(c); MCL 750.411i(1)(d).]

"Emotional distress" is defined as "significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." MCL 750.411h(1)(b).

Within the context of stalking and aggravated stalking, "unconsented contact" refers to "any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued." MCL 750.411h(1)(e); 750.411i(1)(f). This contact includes, but is not limited to:

> (*i*) Following or appearing within the sight of that individual.

> (*ii*) Approaching or confronting that individual in a public place or on private property.

> (*iii*) Appearing at that individual's workplace or residence.

> (*iv*) Entering onto or remaining on property owned, leased, or occupied by that individual.

---

[1] We note that MCL 750.411h was recently amended, 2023 PA 199, effective February 13, 2024. The amendment provided a definition of "dating relationship" for purposes of the statute, but the language defining "course of conduct," "harassment," "stalking," "unconsented contact," and "emotional distress" remained unchanged. In light of these changes, we rely on the statutory language in effect at the time of the trial court's August 30, 2023 order.

(*v*) Contacting that individual by telephone.

(*vi*) Sending mail or electronic communications to that individual.

(*vii*) Placing an object on, or delivering an object to, property owned, leased, or occupied by that individual.  [*Id*.]

In the context of the statutory definition of "stalking," " '[c]ourse of conduct' means a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose."  MCL 750.411h(1)(a); MCL 750.411i(1)(a).  "[T]wo or more separate noncontinuous acts are acts distinct from one another that are not connected in time and space." *Pobursky v Gee*, 249 Mich App 44, 47; 640 NW2d 597 (2001).  Several acts "connected in time and space" may constitute "a single incident comprising a series of continuous acts, each immediately following the other," not a "course of conduct" or repeated unconsented contact with a petitioner. *Id*. at 48.

The trial court erred by granting petitioner a non-domestic stalking PPO against respondent because petitioner failed to allege, and the trial court failed to find, two or more separate and noncontinuous acts as prohibited by the stalking statute.  See *Pobursky*, 249 Mich App at 47.  We agree that petitioner only alleged one instance of unwanted contact and that the trial court misapplied the relevant law regarding non-domestic stalking PPOs.  In her petition, petitioner alleged only that respondent grabbed her hair and pulled her head and the trial court initially denied her petition.

At the evidentiary hearing, petitioner testified that she and respondent had a verbal argument with yelling and explicit language before the incident.  Petitioner also testified that respondent said "something about calling an attorney to get [petitioner] removed from [their mother's] trust" before respondent pulled her hair.  However, petitioner did not testify as to when the parties argued or when respondent made this alleged statement before the hair-pulling incident. Petitioner did not recall respondent ever threatening her before or during the incident, and she did not recall any instances of respondent being physically violent toward her in the past. Following petitioner's testimony, the trial court only identified respondent's pulling of petitioner's hair as a willful, unconsented act for purposes of a non-domestic stalking PPO.  Because the trial court did not find evidence of two or more acts of unconsented contact by respondent, the trial court erred by granting the PPO.  See *id*.

Petitioner asserts on appeal that respondent's comment about removing petitioner from their mother's trust constitutes "unconsented contact" because the statutory definition is a non-exhaustive list and because respondent's actions caused reasonable emotional distress.  While the list provided in MCL 750.411h(1)(e) and 750.411i(1)(f) is nonexhaustive, respondent's alleged statement that she would contact an attorney to remove petitioner from their mother's trust does not bear any resemblance to any of the listed conduct that constitutes unconsented contact, which includes following an individual, approaching an individual in a public place, appearing at an individual's workplace, or contacting an individual without that individual's consent or in disregard of that individual's expressed desire to be left alone or have the behavior discontinued. See *id*.  Additionally, petitioner testified that the parties had always had a contentious relationship involving arguments and yelling, indicating that respondent's alleged statement was not

-4-

extraordinary or unusual given how the parties frequently communicated. Further, petitioner testified that she responded to the alleged statement by telling respondent, "good luck," indicating that respondent's alleged statement was not one that caused petitioner to feel terrorized or frightened, nor that it was a communication that she asked be discontinued. Accordingly, petitioner cannot establish that respondent's statement about contacting an attorney was unconsented, or that the alleged statement falls within the conduct considered to be "unconsented contact" for purposes of the statutory definition. See MCL 750.411h(1)(e); 750.411i(1)(f). Because petitioner only alleged one instance of unconsented contact, she failed to allege facts that constitute stalking or aggravated stalking under MCL 750.411h and 750.411i. See *Pobursky*, 249 Mich App at 47.

Additionally, we note that petitioner did not testify to or allege at any point that respondent's statement about their mother's trust caused her significant mental suffering or distress. To the contrary, petitioner acknowledged that the parties frequently argued and exchanged harsh words with one another. While the trial court noted at the evidentiary hearing that a reasonable person could fear respondent's conduct, the context of the trial court's statement indicates that it only referred to respondent's act of physical violence against petitioner. Accordingly, petitioner cannot establish that respondent's statement caused her reasonable emotional distress or constituted "harassment" for purposes of a non-domestic stalking PPO. See MCL 750.411h(1)(c); MCL 750.411i(1)(d).

Because petitioner did not allege conduct prohibited by MCL 750.411h or MCL 750.411i, the trial court did not have authority to issue a PPO under MCL 600.2950a(1). This amounted to plain error that affected respondent's substantial rights and warrants reversal.

Reversed.


/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Philip P. Mariani